

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-12-2005

# Li v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3920

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Li v. Atty Gen USA" (2005). *2005 Decisions.* Paper 427.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/427

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3920

JIAN-YING LI,
Petitioner

v.

*ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

*(Amended pursuant to F.R.A.P. 43(c))

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A70-583-636)

Submitted Under Third Circuit LAR 34.1(a)
September 26, 2005

Before:  RENDELL FUENTES and GARTH, Circuit Judges.

(Filed:  October 12, 2005)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Petitioner Jian-Ying Li seeks review of an order of the Board of Immigration

Appeals ("BIA") affirming an Immigration Judge's denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Because Li did not establish a well-founded fear of persecution or demonstrate that it is probable that she would be tortured if she returned to China, we will deny the petition for review.

## I. Facts and Procedural History

Li was born in China and lived with her family in the town of Fuzhou in the Fujian province. In July 1988, Li's mother, who had three children at the time and was over forty years old, was ordered to report for sterilization surgery according China's one child family planning policy. Because she had gone through menopause, Li's father requested that her mother be allowed to use birth control instead of having the procedure. His request was denied and Li's mother suffered complications following the surgery that persist to this day. Li's father was so upset by the damage the surgery caused that he angrily confronted the local family planning official. Li's father was forced to apologize for his behavior under threat of being jailed for violating China's family planning policy, however, he subsequently filed a complaint against the family planning official.

In April 1989, Li's aunt and sister, both of whom had two children, were also forced to undergo sterilization procedures. Li claims that her aunt's resistance to the procedure, combined with the complaint her father filed, led government officials to destroy the house in which the family lived. After this, Li and her family moved around

2

to avoid further harassment by government officials and, in 1990, came to the United States. During their absence, the family planning official whom Li's father had confronted was promoted to town supervisor. After Li's grandfather died in 1996, her parents were warned by friends not to return to China for the funeral out of concern that the official would cause them trouble.

Fearing that she would be persecuted if forced to return to China, Li applied for asylum in February 1993. An asylum hearing was held in April 1998, and the asylum officer opined that although Li was credible, she had not established past persecution or a well-founded fear of future persecution. Removal proceedings were instituted and the case was eventually transferred to an Immigration Judge ("IJ") in Pittsburgh. In November 2002, an individual hearing was held to consider the merits of Li's asylum application. In December 2002, the IJ denied her asylum application, as well as her application for withholding of removal and her request for relief under the CAT. Li was granted voluntary departure in lieu of removal. She filed an appeal to the BIA, which affirmed the IJ's decision without an opinion.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). Because the BIA affirmed the IJ without opinion, this Court reviews the IJ's

opinion alone. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc).[1] Pursuant to 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Determinations that an alien experienced persecution or has a well-founded fear of persecution are findings of fact reviewed under the substantial evidence standard. See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001) (holding that agency's finding "must be upheld unless the evidence not only supports a contrary conclusion, but compels it"). Under this standard, "[t]he Court will uphold the agency's findings of fact to the extent that they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (citations omitted).

### III. Discussion

**A. Eligibility for Asylum**

The Attorney General has discretion to grant asylum to an alien who is a "refugee." An individual qualifies as a refugee if he or she is "unable or unwilling" to return to his or her country "because of persecution or a well-founded fear of persecution

---

[1]Li argues that "it was unlawful for the BIA to affirm the IJ's order without an opinion." (Pet. Br. 24.) This Court has previously considered and rejected this proposition. The Attorney General has promulgated regulations permitting the BIA to affirm an IJ's order without an opinion, 8 C.F.R. 1003.1(e)(4), and we have held that this procedure does not violate the Immigration and Nationality Act or the Constitution. Dia, 353 F.3d at 245.

on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). Forced abortion and forced sterilization constitute persecution "on account of political opinion." 8 U.S.C. § 1101(a)(42). An individual with a well-founded fear that she will be forced to undergo a coercive population control procedure of this sort or be subject to persecution for failure to do so has a well-founded fear of persecution. Id.

Li asserts three grounds for asylum. First, she claims that she has suffered persecution in the past by virtue of the fact that members of her family were involuntarily subjected to population control procedures. Second, she argues that she has a well-founded fear that she will herself be subject to population control techniques if she returns to China. Finally, Li states that she will be subject to persecution by her town's supervisor due to her family's history of hostility with him.

We have noted previously that "[t]here is little precedent defining the scope of the population control portion of Section 1101(a)(42)'s protections in cases where the applicant does not claim he or she was personally subjected to forced abortion or sterilization." Cao v. Attorney General of the United States, 407 F.3d 146, 153 (3d Cir. 2005). Yet, our cases nonetheless make it clear that Li cannot claim past persecution based on the forced sterilization of her mother, aunt, or sister. The BIA has held that

5

"past persecution of one spouse can be established by coerced abortion or sterilization of the other spouse." In re C-Y-Z-, 21 I. & N. Dec. 915, 917 (BIA 1997). In such circumstances, one spouse stands in the shoes of the other. Id. at 918. This Court has since affirmed that BIA's view that C-Y-Z is limited to married couples. Thus, we held that an alien did not suffer past persecution by virtue of his fiance's forced abortion. Chen v. Ashcroft, 381 F.3d 221, 229 (3d Cir. 2004). That holding controls in this case as well. If an alien whose own child had been forcefully aborted could not claim past persecution merely because he was unmarried to his fiancé, we cannot see how Li can "stand in the shoes" of her mother, sister, and aunt here. The presence of a marital relationship is the linchpin of an alien's ability to claim past persecution under C-Y-Z.

Lacking grounds to claim past persecution, Li must demonstrate a well-founded fear of future persecution if she were to return to China. Whether fear of persecution is well-founded turns on two inquiries. First, an alien must demonstrate a genuine, subjective fear of persecution. In this case, Li testified that she believed she would be jailed and fined if she returned to China. "A primary means of showing that fear is genuine is with credible testimony." Guo v. Ashcroft, 386 F.3d 556, 565 (3d Cir. 2004). The IJ did not question Li's credibility, so we accept that she had a subjective fear of persecution.

An applicant must also show the objective reasonableness of her fear. "While it is unclear precisely how likely persecution must be to render an applicant's fear of future

6

persecution well-founded, 'one can certainly have a well founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" Id. at 565 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987)). Li claims a well-founded fear that, "as a young female planning on marriage and having a family in the near future" (Pet. Br. 21), she will be subject to population control procedures. She points to the experiences of her mother, aunt, and sister to demonstrate the likelihood of such persecution.

Li's argument would seemingly require asylum protection to any woman being removed to China who could potentially become pregnant sometime in the future. We are unwilling to extend asylum so far. We find persuasive the reasoning of the Court of Appeals for the Eighth Circuit in S-Cheng v. Ashcroft, 380 F.3d 320 (8th Cir. 2004), in which the court considered whether asylum was available to an alien who feared she would be subjected to the same population control procedures that her mother was forced to undergo. The petitioner bore one child in the United States who would not accompany her back to China. She feared persecution because she and her husband wanted to have more children. Id. at 322. The court affirmed the BIA's holding that the petitioner's "fear of an abortion was based on hypothetical or speculative facts." Id. at 323. The petitioner had not demonstrated a likelihood that Chinese authorities would learn of her son in the United States. The court further held that "general plans to have more children" did not establish a well-founded fear of persecution. Id.; see also Huang v. U.S.

7

<u>Attorney General</u>, No. 04-15455, 2005 U.S. App. LEXIS 19519, at *19-20 (11th Cir. Sept. 8, 2005) (per curiam) (holding that a single, childless alien had not established a well-founded fear of persecution based on the involuntary population control procedures her mother underwent and the petitioner's refusal to undergo a state-ordered gynecological exam). Likewise, the substantial evidence in this case supports the view that China's one-child policy would not subject Li to forced sterilization or abortion upon her return. She has no children and is not married. While she has a general intent to have children in the future, it is far from certain at this time that she will actually do so. The IJ found the prospect that Li would be subject to population control procedures speculative, and there is no evidence in the record that would compel us to overturn the IJ's findings of fact on this point.

Li argues that, regardless of China's official policy, she is particularly vulnerable to persecution due to the hostility between her family and the former family planning official who her father confronted more than fifteen years ago. The official is currently the supervisor of her town and, if she returned to China, Li would be required to report her presence to him in order to acquire a national identification card. Noting that nothing in the record indicated that the government official would be interested in persecuting Li fifteen years after she left China, the IJ once again held that Li's fears were purely speculative. This was a reasonable interpretation of evidence presented to the IJ, and we will not disturb it under the substantial evidence standard of review. Since Li has shown

neither past persecution nor a well-founded fear of future persecution, her claim for asylum was properly denied.

## B. Eligibility for Withholding of Removal

The Attorney General must grant withholding of removal to an alien who demonstrates a "clear probability" that, upon repatriation, her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3); Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Because this is a higher standard than that for asylum, an applicant who does not qualify for asylum also does not qualify for withholding of removal. Id. Since Li failed in her claim for asylum, she is ineligible for withholding of removal.

## C. Relief Under the CAT

To qualify for relief under the CAT, an alien must demonstrate that it is more likely than not that she would be tortured if she returned to the proposed country of removal. 8 C.F.R. § 1208.16. The IJ found that Li "failed to establish that she would be tortured for any reason if she returned to the People's Republic of China." (Oral Op. of IJ at A134.) Li has not argued otherwise on appeal, and there is no evidence in the record that compels us to revisit the IJ's conclusion.

## III. Conclusion

For the foregoing reasons, we will deny Li's petition for review of the BIA's order.